STATE of Missouri at the relation of H. K. PORTER COMPANY, Inc., a Corporation, Relator,

v.

The Honorable James F. NANGLE, Judge of the Circuit Court of the City of St. Louis, State of Missouri, Respondent.

No. 32113.

St. Louis Court of Appeals.

Missouri.

July 19, 1966.

Coburn, Croft & Kohn, Alan C. Kohn and Alan E. Popkin, St. Louis, for relator.

John A. Joyce, Sullivan & Joyce, St. Louis, for respondent.

CLEMENS, Commissioner.

This is an original proceeding in prohibition. It presents two issues: Did the respondent judge exceed his jurisdiction by permitting the plaintiff-employees to proceed with their suit to recover vacation pay when they based their claims on the relator-employer's alleged custom or usage in giving paid vacations to employees? And, did the respondent exceed his jurisdiction by requiring the relator-employer to answer interrogatories about the history and structure of relator's affiliated corporations?

Nineteen plaintiffs, who were discharged employees of the relator, had sued the relator for $4,805.54 in vacation pay. The trial court denied the relator's motion to dismiss the petition for failure to state a claim. Our preliminary writ was then issued on the ground that the petition did not state a cause of action and could not be amended to do so, and that the circuit court was therefore exceeding its jurisdiction by proceeding with the cause. This is a proper ground for prohibition. State ex rel. Henderson v. Cook, 353 Mo. 272 (banc), 182 S.W.2d 292 [3–5]; State ex rel. Johnson v. Sevier, 339 Mo. 483 (banc), 98 S.W. 2d 677 [8, 9].

The challenged part of the petition states:

"3. That consistent with the long and *well known practice and custom*, defend-ant gave plaintiff, and other employees in plaintiffs' employment status class, annual paid vacations. Such vacations were *deemed earned* by employees at the close of each year and were, for services performed for the defendant by those employees during the year, then closing. The actual vacations so earned were given, or taken by said employees in the subsequent year immediately following the year in which they were earned." (Our emphasis.)

The company argues that the petition pleads no agreement to give plaintiffs paid vacations, and that its alleged custom and practice of doing so does not create any right in favor of the plaintiffs. In testing the sufficiency of the petition, we must construe it liberally. Mathews v. Pratt, Mo., 367 S.W.2d 632 [1–3]; § 509. 250, V.A. M.S. And, as said, the test is not whether the petition *does* state a cause of action, but whether it *can be amended* to do so without a departure from plaintiffs' theory. (State ex rel. Henderson v. Cook and State ex rel. Johnson v. Sevier, supra.)

The company relies on this court's opinion in Burns v. Lewis-Howe Co., Mo.App., 266 S.W.2d 14. The issue there was not one of pleading, but of the sufficiency of evidence. Although there was evidence in that case about a company policy to pay employees an annual bonus, the plaintiff did not rely on that policy: she relied on an express promise to pay her a bonus. We held that the evidence did not show that promise. The Burns case does not control the issue of pleading now before us.

The company seeks to require plaintiffs to rely on an *express* agreement; it ignores the plaintiffs' theory that they are relying on an *implied* agreement to grant paid vacations, the implication arising from custom or usage. This requires us to note the basic principles of the law of implied contracts.

A contract between two persons is an abstract thing: written instruments and oral statements are but evidence of what

the parties intended. At times, customs and usages may be considered as further evidence of the parties' intention. Liberty Storage Co. v. Kansas City Terminal Ware. Co., Mo.App., 340 S.W.2d 189 [3]. "Usage" is a practice or course of habitual conduct among a certain group or class of people. See 21 Am Jur 2d, Customs and Usages § 2; 5 Williston on Contracts, Third Edition § 649, p. 9; Goslin v. Kurn, 351 Mo. 395, 173 S.W.2d 79 [7]; Hartman v. Union Electric Light & Power Co., 331 Mo. 230, 53 S.W. 2d 241 [4, 5]. As said in Restatement of the Law of Contracts:

"§ 246. EFFECT OF OPERATIVE USAGES.

Operative usages have the effect of

(a) * * *

(b) adding to the agreement or manifestations of intention provisions in accordance with the usage, and not inconsistent with the agreement or manifestations of intention."

The illustration given there:

"8. A and B enter into a contract for a year's employment of B by A. By an operative usage such a contract may be terminated by a month's notice. That provision is part of the contract."

Missouri cases hold that customs and usages *may,* by implication, become part of the parties' contract. Jacobs v. Danciger, 328 Mo. 458, 41 S.W.2d 389 [1, 2], 77 A.L.R. 1237; Sherrill-Russell Lumber Co. v. Krug Lumber Co., 216 Mo.App. 1, 267 S.W. 14 [3–5]; Staroske v. Pulitzer Pub. Co., 235 Mo. 67, 138 S.W. 36 [1, 2]. These cases link up with the early case of Southwestern Freight & Cotton Press Co. v. Stanard, 44 Mo. 71, l. c. 82–83, where the plaintiff relied on a custom among St. Louis flour merchants that title to flour passed at the moment the buyer gave his order to the seller. The court said: "Where a contract is made as to a matter about which there is a custom well established, such custom is to be understood as forming a part of the contract, and may always be referred to for the purpose

of showing the intention of the parties in all those particulars which are not expressed in the contract." Quoting further from Restatement of the Law of Contracts:

"§ 247. WHEN USAGE IS OPERATIVE UPON PARTIES.

A usage is operative upon parties to a transaction where and only where

(a) they manifest to each other an assent that the usage shall be operative, or

(b) either party intends the effect of his words or other acts to be governed by the usage, and the other party knows or has reason to know this intention, or

(c) the usage exists in such transactions and each party knows of the usage or it is generally known by persons under similar circumstances, unless either party knows or has reason to know that the other party has an intention inconsistent with the usage."

These principles have been acknowledged in cases of employment contracts. Leach v. Hannibal & St. Joe Ry. Co., 86 Mo. 27, l. c. 31–32; Gutweiler v. Lundquist, 200 Mo. App. 526, 207 S.W. 838 [1]. The existence of the usage, and the parties' knowledge of and reliance thereon, must be specifically pleaded. Farm & Home Savings & Loan Ass'n of Mo. v. Stubbs, 231 Mo.App. 87, 98 S.W.2d 320 [29]; Staroske v. Pulitzer Pub. Co., supra, n. 3. And, whether each of those elements exists is a question of fact to be determined by the jury. Restatement of the Law of Contracts, § 247, comment "c"; Baker v. J. W. McMurry Contracting Co., 282 Mo. 685, 223 S.W. 45 [15]; Noyes-Norman Shoe Co. v. Cooper, Mo.App., 4 S.W.2d 486 [6]; Beaty v. Cruce, 200 Mo.App. 199, 204 S.W. 553 [1].

■ Considering these principles of implied contracts, considering the liberality with which we must judge plaintiffs' petition, and considering plaintiffs' right to

amend, we cannot say that the petition cannot be amended to state a claim without a departure from plaintiffs' theory. So, the writ of prohibition will not lie on this ground.

Another ground for issuing our preliminary writ arose from the plaintiffs' third set of interrogatories to the relator-company. In its answers to plaintiffs' original and amended petitions, the company had admitted its ownership and operation of the factory where plaintiffs were employed from 1953 to 1962. Then, by its amended answer, the company alleged that other named corporations had owned and operated the factory during these years. The plaintiffs then filed their third set of interrogatories, asking for details about the history and structure of each of these corporations. The relator-company claimed the interrogatories were irrelevant and burdensome; they countered with objections to the interrogatories and a motion for a protective order. These were denied by the trial court.

We need not rule on the propriety of those interrogatories because the issue has become moot. Plaintiffs sought the information only to establish the relator's "ownership and management of the subject facilities during the period in question." Relator now admits its responsibility and control, saying in its brief:

"* * * Mr. Joyce [plaintiffs' counsel] stated that the only information he was seeking in his interrogatories was whether H. K. Porter Company or subsidiaries controlled by it were responsible for and in control of the Leschen Wire Rope Division of the Relator. Relator agreed to admit that that was true *and still admits the truth of that statement.*" (Our emphasis.)

This is a judicial admission and it makes the issue moot. Politte v. Wall, Mo.App., 256 S.W.2d 283 [1]; Harvey v. Peoples Bank, Mo., 136 S.W.2d 273 [3]. Plaintiffs now have no need for the information sought by their interrogatories, and we will not decide the abstract question of whether they were *entitled* to have it. State ex rel. Kansas City Public Service Co. v. Waltner, 350 Mo. 1021, 169 S.W.2d 697 [24]; State ex rel. McFaddin v. Green, Mo.App., 138 S.W.2d 4.

This brings us to the question of how we should dispose of our preliminary writ.

As the case now stands below, the relator is obliged to answer the plaintiffs' interrogatories. If we quash the writ, that obligation will stand. In view of relator's judicial admissions, there is now no need to answer the interrogatories, and relator should not be compelled to do so. So, our writ will issue only for the purpose of relieving the relator from its obligation to answer plaintiffs' third set of interrogatories. The writ is being issued not because the trial court was in error, but because relator's belated admission in its brief has now made it unnecessary to do what the trial court ordered it to do.

Therefore, our preliminary writ will be made absolute only insofar as it prohibits the respondent judge from compelling relator to answer plaintiffs' third set of interrogatories, and the preliminary writ will be quashed as to all other matters. Costs are to be taxed against the relator.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, our preliminary writ is ordered to be absolute only insofar as it prohibits the respondent from compelling the relator to answer plaintiffs' third set of interrogatories; and the preliminary writ is ordered quashed as to all other matters. Costs are ordered taxed against the relator.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.