**Edward BOYLE, Plaintiff-Appellant,**

**v.**

**HIGMAN EQUIPMENT COMPANY, INC., d/b/a Siggins Company, Defendant-Respondent.**

**No. KCD 30215.**

Missouri Court of Appeals, Western District.

March 3, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 7, 1980.

Application to Transfer Denied May 13, 1980.

Eugene F. DeShazo, Kansas City, for plaintiff-appellant.

Walter A. Raymond, Kansas City, for defendant-respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

SOMERVILLE, Presiding Judge.

Edward Boyle (Boyle) brought an action for accounting against Higman Equipment Company, Inc., d/b/a Siggins Company (Higman) for commissions allegedly due under an oral contract of employment.

Trial of this bench tried action proceeded in a highly fragmented manner. The trial commenced on May 5, 1975, and Boyle's evidence was received at that time. For reasons undisclosed by the record an indefinite recess was apparently declared on May 5, 1975, and before trial resumed the original judge was assigned to the criminal docket and the case was assigned to another judge. Trial was resumed before the newly assigned judge on November 4, 1976. By

stipulation of the parties a transcript of Boyle's testimony given on May 5, 1975, and seven exhibits offered by Boyle and received in evidence on May 5, 1975, were offered and received in evidence on November 4, 1976, and Boyle then rested his case. Higman then presented its evidence consisting of oral testimony and a number of exhibits and rested and the case was submitted to the newly assigned judge on November 4, 1976, and taken under advisement.[1]

On March 30, 1978, judgment was entered reciting that an accounting rendered by Higman showing that it was indebted to Boyle in the sum of $929.79 was "fair" and "accurate", and ordering, adjudging and decreeing that Boyle have and receive from Higman the sum and amount of $929.79, together with costs, and that execution issue.

Boyle has appealed, claiming that certain "charge-backs" deducted by Higman, particularly "charge-backs" amounting to 25% of each commission for subsequently servicing Boyle's sales accounts after he terminated his employment, were in contradiction with and beyond the terms of the oral contract of employment and therefore erroneously relied upon and taken into consideration in arriving at the total amount of commissions found to be due and owing by Higman to Boyle.

An anemic record, at best, was provided on appeal as no exhibits were made available to this court. As drawn from the record which this court had to work from, these are the facts. Boyle was employed as a salesman on a commission basis by Higman, a distributor of metal shelving, metal lockers and related shop equipment items, under an oral contract of employment. Boyle's employment, which commenced in March, 1969, was for an indefinite term. In March of 1972, Boyle voluntarily terminated his employment with Higman and shortly thereafter went to work for one of Higman's competitors.

Boyle spelled out the terms of his oral contract of employment in his petition with reference to each sale as follows: "Plaintiff [Boyle] would receive thirty per cent (30%) of gross profits after deducting direct costs such as shipping and handling; in addition, if a sale produced more than a thirty per cent margin above the cost and handling, plaintiff [Boyle] would receive a commission of fifty per cent (50%) of the excess above such margin." Boyle's testimony as to the terms of his oral contract of employment conformed with the allegations of his petition. Higman, by way of answering Boyle's petition, pleaded "that the terms of his [Boyle's] employment were as stated with the exception that sales producing more than 30% margin above cost of merchandise entitl[ing] plaintiff [Boyle] to a part of the excess was subject to reduction by loss on bad accounts, bad purchases, bad handling or incorrect computation in accounts handled by plaintiff [Boyle]." Higman's evidence as to the terms of the oral contract of employment with regard to the first category of commissions comported with Boyle's testimony. Moreover, the evidence disclosed that both parties were in agreement that as to sales involving a gross profit of 30% or less, direct costs such as shipping or handling, along with Higman's cost for items sold, were deducted from the selling price for the purpose of determining the gross profit upon which the 30% commission was applicable. Thus, the parties, according to the evidence and their respective pleadings, were in agreement as to the terms of the original contract of employment insofar as the percentage and basis for computing Boyle's commissions on sales that produced a gross profit of thirty percent or less but were in disagreement as to the basis for computing Boyle's commission on sales producing gross profits of more than thirty percent.

According to Boyle's testimony before terminating his employment he produced sales for Higman entitling him to commissions totaling $8,396.34 on sales falling within the first commission category and commissions totaling $760.74 on sales fall-

1. The record fails to disclose an interlocutory decree ordering an accounting.

ing within the second commission category, all of which Higman had refused to pay.

Higman, without regard to which commission category the sales fell within, presented evidence pertaining to various "charge-backs" which it asserted reduced the net amount of all unpaid commissions claimed by Boyle. Higman, on the theory that such was the custom or usage of the trade, albeit over Boyle's objection based on the pleadings, introduced evidence that it arbitrarily arrived at a 25% "charge-back" for subsequently servicing all sales accounts which Boyle claimed commissions on and, accordingly, reduced the amount of each commission twenty-five percent. Other "charge-backs" claimed by Higman and complained of by Boyle hazily course throughout the record in this case such as "collection" costs without regard to which commission category the involved sales fell within, litigation expenses in connection with a sale for which no commission was claimed by Boyle, and a "charge-back" against a net commission claimed by Boyle. for a percentage of an amount reimbursed a purchaser for faulty merchandise shipped by the manufacturer direct to the purchaser, when, in fact, Higman had been reimbursed by the manufacturer for such amount. However, the record and briefs pertaining to them are so inadequate as to defy their resolution on this appeal.

▮ The amount of the judgment entered by the trial court reflects that a 25% "charge-back" for subsequently servicing each sales account was deducted from every commission claimed by Boyle for the purpose of arriving at the total amount of unpaid commissions due and owing Boyle and for which judgment was rendered in Boyle's favor. What was said in *E. C. Robinson Lumber Co. v. Ladman*, 255 S.W.2d 72, 78 (Mo.App.1953), is particularly apposite at this point: "Pleadings are construed most strongly against the pleader. [Cases cited.] An allegation of fact in an answer is binding on the pleader and precludes the party from afterwards maintaining a contrary or inconsistent position. [Cases cited.] A party who in unambiguous language pleads facts constituting an admission of an essential element of his adversary's case cannot escape their legal effect . . . in the absence of an attempt to amend, or revoke the admission for error of fact." See *Wehrli v. Wabash Railroad Company*, 315 S.W.2d 765, 773 (Mo.1958), citing *C. E. Robinson Lumber Co. v. Ladman, supra*, as additional authority. By way of reiteration, as to sales falling within the first commission category, Boyle pleaded that the oral contract of employment entered into between himself and Higman provided that Boyle was to receive as a commission "thirty per cent (30%) of gross profits after deducting direct costs such as shipping and handling", and Higman in its answer admitted such to be the terms of the oral contract of employment regarding the first category of commissions. Notwithstanding this binding admission on Higman's part, plus the fact that Higman's evidence at trial was antithetical to any claim that the terms of the oral employment contract as pleaded with reference to the first category of commissions was ambiguous, and absent any effort on its part "to amend, or revoke the admission for error of fact", Higman sought to jump its binding effect by purporting to show that it was the custom or usage of the trade to deduct "charge-backs" from commissions for subsequently servicing sales accounts. As stated in *Jordan v. Daniels*, 224 Mo.App. 749, 27 S.W.2d 1052, 1056 (1930), "where the terms of a contract are clear and unambiguous, they cannot be varied or contradicted by evidence of customs or usage, and this is true whether the contract be written or verbal." Additionally, custom or usage of the trade is a matter which must be specifically pleaded. *State ex rel. H. K. Porter Company, Inc. v. Nangle*, 405 S.W.2d 501, 504 (Mo.App.1966). Higman's answer is silent as to any purported custom or usage of the trade.

▮ Higman's brief fails to directly confront the issues and arguments tendered by Boyle, but, instead, attempts to circumvent them by asserting a number of collateral arguments. First, Higman takes the posi-

tion that Boyle was not entitled to a judgment in any amount because Boyle forfeited all right to any unpaid commissions otherwise earned during his period of employment when he voluntarily quit his employment and went to work for a competitor. The legal infirmity of Higman's position is obvious for two reasons. First an employment contract for an indefinite period, such as here, generally may be terminated at the will of either party. *Want v. Century Supply Company*, 508 S.W.2d 515, 516 (Mo.App. 1974). Higman has failed to advance any argument or cite any authority why this general rule is inapplicable in the instant case. Moreover, absent a valid restrictive covenant, or breach of a confidential relationship, neither of which is claimed by Higman to exist in the instant case, Boyle was not precluded from engaging in competition with Higman when he voluntarily terminated his employment. *Thau-Nolde, Inc. v. Karuse Dental Sup. & Gold Co., Inc.*, 518 S.W.2d 5, 10 (Mo.1974). Second, the position taken by Higman on appeal that Boyle forfeited all right to any commission is tantamount to claiming on appeal that the trial court erred in rendering judgment for any amount in Boyle's favor. Since Higman took no appeal, it lacks standing to attack the judgment on the grounds that the trial court erred in entering judgment in favor of Boyle for any amount. The controlling principle upon which this conclusion rests finds clarity of expression in *Senter v. Ferguson*, 486 S.W.2d 644, 648 (Mo. App.1972): "The law is that a respondent may attack the erroneous rulings of the trial court for the purpose of sustaining a judgment in *respondent's* favor. *St. Charles Savings Bank v. Denker*, 275 Mo. 607, 205 S.W. 208; *Crabtree v. Bankers Life Ins. Co. of Des Moines, Iowa*, 233 Mo.App. 1067, 128 S.W.2d 1089; *Kennedy v. Dixon*, Mo., 439 S.W.2d 173. The judgment in the case before us was not in favor of the respondent. She, therefore, did not bring herself within the exception to the general rule that a party who does not appeal will not be heard as to errors committed against him in the trial court. *Crabtree v. Bankers Life Ins. Co.*, supra. Respondent, as an aggrieved party, had the right to appeal from a judgment in favor of the plaintiff. This she did not do, and so she has no standing to set forth errors allegedly committed in the trial court, on any grounds whatsoever. *Kennedy v. Dixon*, supra."

Next, Higman seizes upon some isolated statements contained in Boyle's brief which it construes as an attempt on Boyle's part to place "the burden of proof in this case", both below and on appeal, on Higman. Frankly, the thrust of this argument is imperceivable to this court. Suffice it to say, even if the isolated statements are subject to being construed as Higman suggests, this court has not relied upon them nor is the opinion herein in any way predicated upon grounds which misconceive where the burden of proof lay.

■ Higman also asserts in its brief on appeal that Boyle's "failure . . . to produce or account for . . . monthly settlement sheets with . . . [Higman's] itemized figures thereon which were delivered into . . . [Boyle's] exclusive possession calls for the strong presumption that such settlement sheets would not be favorable to . . . [Boyle]." The only argument tendered in support of this assertion is a lengthy quotation from *Morris v. Holland*, 529 S.W.2d 948, 953 (Mo.App.1975), the gist of which is contained in the following excerpt: "This failure to produce the slips evidencing loans authorized a strong presumption that they would not be favorable to defendants had they been produced, . . . ." The "slips evidencing loans" referred to in *Morris*, although prepared by and retained in the custody of defendants and orally referred to during the testimony of one of the defendants, were never produced or offered into evidence as exhibits. Thus, the facts in *Morris* are clearly distinguishable from the facts in the instant case as the "monthly settlement sheets" referred to by Higman were prepared by it. If Higman's skeletal argument is properly understood by this court, Higman appears to be saying that Boyle's failure to introduce certain "monthly settlement sheets" which were prepared by and obviously favorable

to Higman constituted a binding presumption on Boyle that the commissions reflected by the "monthly settlement sheets" prepared by Higman and delivered to Boyle were correct. Understandably, Boyle was not interested in introducing as a part of his case self-serving memoranda prepared by Higman. It is pertinent to note that Higman made no effort to obtain the "monthly settlement sheets" by way of subpoena or motion to produce. *Morris v. Holland, supra*, the single authority cited by Higman, fails to support its argument that Boyle's failure to produce the "monthly settlement sheets" constituted a binding presumption on Boyle as to their correctness and this court's own research has failed to uncover any authority which does so.

For reasons heretofore stated that portion of the judgment of the trial court in this bench tried case as to the total amount of commissions found to be due and owing to Boyle cannot stand because of an erroneous application of the law and by reason thereof this court is of the "firm belief" that the amount of the judgment was against the weight of the evidence, detrimentally so to Boyle, and therefore wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

This court is not unmindful of the mandate of Rule 84.14 that "[u]nless justice otherwise requires" it "shall dispose finally of the case." However, the operative language "[u]nless justice otherwise requires" cannot be ignored in this case as any duty on this court to make final disposition on appeal necessarily presupposes a record upon which final disposition can be made with fairness and accuracy. The record on appeal in this case defies final disposition at the appellate level with any semblance of fairness and accuracy. For instance, none of the exhibits offered by the parties and admitted into evidence were included in the transcript or separately filed in this court on appeal.

An array of unraised or inadequately raised issues have surfaced from the meager record and sparse briefs in this case which necessarily remain unresolved. It behooves counsel on retrial to analyze their respective positions regarding procedural matters, appropriate rules of evidence and applicable principles of substantive law because the exigency of time, the impropriety of attempting to tell counsel how to try this case, and a proper reluctance to engage in purely academic discussions restrain this court from saying more.

The judgment below is affirmed regarding Boyle's right to an accounting but is reversed regarding the amount awarded to Boyle and remanded for a new trial for an accounting to determine the correct amount of commissions due and owing by Higman to Boyle.

Judgment affirmed in part and reversed in part, and cause remanded to the trial court for a new trial to the extent immediately hereinabove mentioned.

All concur.