STATE OF MISSOURI at the relation of GEORGE C. JOHNSON, STATE PURCHASING AGENT, and THE GENERAL ELECTRIC X-RAY CORPORATION, a Corporation, Relators, v. NIKE G. SEVIER, Judge of the Circuit Court of Cole County.—98 S. W. (2d) 677.

Court en Banc, October 20, 1936.

484

*Roy McKittrick*, Attorney General, and *James L. HornBostel*, Assistant Attorney General, for George C. Johnson; *Ragland, Otto & Potter* for General Electric X-Ray Corporation.

*H. P. Lauf* and *John O. Bond* for respondent.

FRANK, J.—Prohibition: Relators seek to prohibit Honorable Nike G. Sevier, Judge of the Circuit Court of Cole County, from proceeding further with a certain mandamus suit pending in said court.

The pertinent facts are, in substance, as follows:

Relator, George C. Johnson, is purchasing agent for the State and as such is authorized by statute to purchase supplies, materials, equipment, etc., for all departments of the State. [Laws 1933, p. 410.] Said statute provides that all purchases shall be based on competitive bids; that on any purchase where the estimated expenditure shall be two thousand dollars or over, the purchasing agent shall advertise for bids, and the contract shall be let to the lowest and best bidder. The statute further provides that the purchasing agent shall have the right to reject any or all bids.

The purchasing agent advertised for bids for the furnishing and installation of an X-ray apparatus to be installed in the Missouri State Sanatorium located at Mount Vernon. Three bids were received as follows:

| | |
|---|---|
| Rosenthal X-Ray Company | $14,944.25 |
| General Electric X-Ray Corporation | $14,800.00 |
| Greb X-Ray Company | $13,602.00 |

The purchasing agent awarded the contract to the General Electric X-Ray Corporation at $14,800. The Greb X-Ray Company, a partnership composed of E. M. Greb and C. T. Davis, brought mandamus in the Circuit Court of Cole County against the purchasing agent and the successful bidder praying that said purchasing agent be commanded to rescind the award of the contract to the General Electric X-Ray Corporation and award same to said Greb X-Ray Company. An alternative writ of mandamus was issued by said circuit court in accordance with the prayer of the petition therefor. The purchasing agent and the successful bidder, as relators, then sought our writ of prohibition to prohibit the circuit court from taking further action in said mandamus proceeding. Our provisional rule issued to which respondent made return in the nature

·of a demurrer and motion to quash. The cause was orally. argued and submitted for judgment on the pleadings.

 The authorities are practically unanimous in their announcement of the general rules that the duties of officers intrusted with the letting of contracts for public works or public improvements to the lowest and best bidder are not duties of a strictly ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond control of the courts by mandamus. This is especially true where, as in the case at bar, the officer is authorized to reject any or all bids. [High, Extraordinary Remedies (3 Ed.), p. 101, sec. 92; Coquard v. School District, 46 Mo. App. 6; State ex rel. v. McGrath, 91 Mo. 386, 393, 3 S. W. 846; State ex rel. Montfort v. Meier, 142 Mo. App. 309, 126 S. W. 986; State ex rel. Dolman v. Dickey et al., 280 Mo. 536, 219 S. W. 363.] However, there is an exception to the general rule. The exception is that "mandamus will lie to correct or control the action of administrative officers, bodies and other tribunals, notwithstanding that an official discretion may be reposed in them, where they have in fact refused to exercise such discretion in a lawful manner, impartially and in good faith."

Respondent concedes the general rule to be as above stated, but contends that the facts alleged in the petition for mandamus and in the alternative writ bring the case within the exception to the general rule and subjects the action of the purchasing agent in awarding the contract, to correction and control by mandamus.

The State Purchasing Agent owed a duty to the public to honestly and fairly exercise his discretion to award the contract in question to the lowest and best bidder. If he failed to lawfully perform that duty his action in the matter could be reached and controlled by mandamus. Private citizens as well as taxpayers or proper public officials, may maintain mandamus to enforce the performance of a public duty. The rule of law governing such suits when brought by private citizens is well stated in State ex rel. Black and Gilmore v. Wilson, 158 Mo. App. 105, 119-120, 139 S. W. 705, as follows:

"Where a public duty is sought to be enforced in which the public generally is interested, by private citizens on behalf of the public as well as on their own, they may move for a writ of mandamus and are not required to plead or prove any special or particular interest in the result of the performance of the general duty because the people are regarded as the real moving party. [State ex rel. Rutledge v. School Board, 131 Mo. l. c. 514, 33 S. W. 3; People ex rel. Van Dyke v. Railroad, 42 Fed. l. c. 641.] But a different rule applies where a private citizen seeks to enforce the performance of an official duty to protect a private right. . . . In cases where private rights are sought to be enforced, it must be made to appear by the

petition or alternative writ that the petitioner has been injuriously affected by respondent's default or breach of duty, or that he will be injuriously affected if that duty is not performed. [26 Cyc. 443.]''

38 Corpus Juris, page 842, section 548, states the rule thus:

''It is a rule of very general application that, where an individual has a special or peculiar interest of his own independent of that which he holds in common with the people generally, he is entitled to protect or enforce this right by mandamus; and the fact that it may be the duty of the state or of the public acting through its officers to take action in the matter does not defeat the right of an individual having a special interest to maintain the proceeding. Nevertheless, if an individual sues, not in behalf of the public, but solely in his own behalf, he must have a special pecuniary interest in the matter, and a clear legal right to the relief asked, else the writ will not issue.''

The mandamus in question was brought by two private parties, E. M. Greb and C. T. Davis, transacting business as Greb X-Ray Company. The petition for mandamus does not allege that the action was brought on behalf of the public or to protect the interests of the public. It alleges, in substance, that bids were advertised for; that three bids were made; that relators were the lowest and best bidder, but regardless of that fact the contract was awarded to General Electric X-Ray Corporation. It then characterizes the action of the purchasing agent in so awarding the contract as fraudulent, collusive and a gross abuse of discretion, and concludes by asking affirmative relief, to the effect that the award as made be canceled, and the contract be let to petitioners. The last paragraph of the petition alleges that the action of the purchasing agent constituted a fraud on petitioners, a fraud on the taxpayers of the State, and a fraud on petitioners as taxpayers, but it nowhere appears that the suit was brought to protect the interests of petitioners and the public as taxpayers of the State.

The allegations of the petition together with the prayer for relief clearly show that petitioners thought they had a lawful right to the contract on the alleged ground that they were the lowest and best bidders, and that the mandamus was brought to protect and enforce that private right. Evidently the trial court thought so, because the alternative writ says:

''Now therefore, it being the desire of the court that full and speedy justice shall be done in this behalf to them, the said E. M. Greb and C. T. Davis, doing business as Greb X-Ray Company, the court does command and enjoin you,'' etc.

In addition, the petitioners themselves, in their brief filed in this court, construed the mandamus action as one to enforce a supposed private right. In support of their alleged right to mandamus, they say:

"Where a private individual has a special and peculiar interest in the enforcement of the public right or the performance of the public duties, apart from the interest that he has a member of the public at large, he is entitled to protect and enforce it by mandamus."

The mandamus being brought solely in behalf of the petitioners, it was incumbent upon them to allege a special pecuniary interest in the matter, showing a clear legal right to the relief asked, which they did not and cannot do, for the reason that the rejection of their bid did not give them any private right which they could enforce by mandamus or otherwise. This is so for two reasons, (1) because the "advertisement was not an offer of a contract, but an offer to receive proposals for a contract," and (2) because the statute requiring that contracts be let to the lowest and best bidder was designed for the benefit and protection of the public and not the bidders. [High, Extraordinary Remedies, pp. 101, 102, sec. 92.] A like question was before this court in State ex rel. Doniphan State Bank v. Harris et al., 176 S. W. 9. There, as here, an unsuccessful bidder brought mandamus to compel the awarding of a public contract to it. In denying mandamus, we said:

"This is a proceeding by mandamus, instituted in the Circuit Court of Ripley County, to compel the county court of that county to select relator as the county depositary. There was judgment for respondents, and relator appealed.

"There was much evidence pro and con, but a brief statement is sufficient to disclose a ground upon which the judgment must be affirmed. The county court advertised for bids for the county, school, and drainage district moneys, and three bidders responded. relator, the respondent bank, and the Bank of Naylor. The latter is not a party to this proceeding. The Ripley County Bank, respondent here, bid 2.5 per cent per annum on the county and public school funds and bid 3 per cent on the drainage ditch funds, and, in addition, offered to act as fiscal agent for the county, free of charge, and maintain county warrants (then at discount) at par. The Bank of Naylor bid 6.01 per cent per annum on the drainage ditch funds and 5.85 per cent per annum on the county and public school funds. Relator bid 6.125 per cent per annum on the county funds, including the public school funds, and bid 5.87 per cent per annum on the drainage ditch funds.

"Relator has no right to maintain this proceeding simply in its capacity as an unsuccessful bidder (Anderson et al. v. Public Schools, 122 Mo. 61, 27 S. W. 610, 26 L. R. A. 707; State ex rel. v. McGrath, 91 Mo. 386, 3 S. W. 846), but must maintain it, if at all, in its role as a taxpayer in Ripley County. In that capacity it represents the public, and it is the interest of the public which is to be considered, not that of relator as a bidder for the funds."

The opinion concludes with the following pertinent statement:

"So far as the contract with Ripley County Bank is concerned, the statute affords taxpayers ample remedy to cancel it in case it was not entered into in good faith. [Sec. 3729, R. S. 1909.]"

In Anderson v. Public Schools, 122 Mo. 61, 27 S. W. 610, the same question was decided. In that case the school district advertised for bids for the construction of a school building. Two bids were received. The school board reserved the right to reject any or all bids. The contract was awarded to the highest bidder. The unsuccessful bidders sued the district for damages on the theory that they were the lowest and best bidders and, therefore, entitled to the contract, and the refusal of the board to award the contract to them resulted in damages to them in the sum of $15,000 which they sought to recover. The trial court sustained a demurrer to the petition. In affirming the action of the trial court we said:

"It is indeed, asserted that the defendant rejected plaintiffs' bid, 'without cause, arbitrarily and capriciously, through favoritism and bias.' But if defendant had the absolute right to reject any and all bids, no cause of action would arise to plaintiffs because of the motive which led to the rejection of their bid. The right to reject the bids was unconditional. Defendant was entitled to exercise that right for any cause it might deem satisfactory, or even without any assignable cause. Whatever its rules or practice as to the acceptance of bids may have been, plaintiffs' rights cannot be justly held to be greater than those conferred by the published advertisement on which their bid was made. That advertisement was not an offer of a contract; but an offer to receive proposals for a contract. [Spencer v. Harding (1870), 5 C. P. L. R. 561.]"

While the Anderson case was not a mandamus action, the rule of law it pronounces is applicable to the controlling question in the instant case. The holding in that case that plaintiffs had no cause of action regardless of the motive which prompted the rejection of their bid, means and can mean but one thing, and that is, that they, as unsuccessful bidders, were not deprived of anything to which they were legally entitled, and for which they could have maintained mandamus.

[See, also, Dickey v. Volker, 321 Mo. 235, 254, 11 S. W. (2d) 278; Hanlin v. The Independent Dist. of Charles City, 66 Iowa, 69.]

■ We hold that the petition in the mandamus action did not state or attempt to state a cause of action of which the circuit court would have jurisdiction. This brings us to the contention that if the petition failed to state a cause of action that would be ground for demurrer in the circuit court but not ground for prohibition.

The rule governing the contention made may be thus stated: If it can be determined from the petition that the pleader attempted to

state a case belonging to a class of which the circuit court has general jurisdiction, but failed to do so, the petition would be subject to demurrer or amendment in the circuit court, and prohibition would not lie. [State ex rel. Leake v. Harris, Circuit Judge, et al., 334 Mo. 713, 67 S. W. (2d) 981, 982.] But where a petition reveals that the pleader has not stated and cannot state a cause of action of which the circuit court would have jurisdiction, then prohibition will lie. These facts must be determined from the allegations of the petition. It will not do to say in the instant case that prohibition will not lie because the circuit court has general jurisdiction of mandamus actions and, therefore, had jurisdiction to say whether or not the petition for mandamus stated facts sufficient to authorize the issuance of the alternative writ. Speaking to a like question in State ex rel. v. Wood, 155 Mo. 425, 445, 56 S. W. 474, we said:

"Whether the circuit court was without jurisdiction altogether, or having jurisdiction of the class of cases in which the injunction was sought it exceeded its jurisdiction, is only ascertainable in this case by the averments in the bill filed in that court and the orders made thereon. The fact that said court was a court of general equity jurisdiction and has the power to issue or direct writs of injunction to issue, will not of itself answer the contention made in this case. Courts of equity are not invested with power to enjoin in any and every case but there must be some special circumstances bringing the case under some recognized head of equity jurisdiction before it will wield the powerful writ of an injunction. By means of the process of exclusion and inclusion we will be greatly aided in reaching the sufficiency of the petition to state a case belonging to a class in which courts of equity are authorized to grant injunctive relief. [State ex rel. McCaffrey v. Aloe, 152 Mo. 466.]"

[See, also, State ex rel. Hyde v. Westhues, 316 Mo. 457, 469, 290 S. W. 443; State ex rel. Hog Haven Farms v. Pearcy, 328 Mo 560, 564, 41 S. W. (2d) 403.]

The relators in the mandamus action did not bring the suit as taxpayers, or as representatives of other taxpayers. They sought mandamus to enforce the performance of an alleged public duty to protect an alleged private right—that is—the awarding of the contract in question to them. In this situation it was incumbent upon them to allege and prove a private, pecuniary interest in the matter. They, as unsuccessful bidders, have no private pecuniary interest in the matter which the law will recognize and enforce by mandamus or otherwise. [Authorities, supra.] For this reason they have not stated and cannot state a case in which the circuit court would have jurisdiction or authority to grant them any relief by mandamus.

Respondents rely mainly on the cases of State ex rel. First National Bank v. Bourne, 151 Mo. App. 104, 131 S. W. 896, and State ex rel.

Journal Printing Company v. Dreyer, 183 Mo. App. 463, 167 S. W. 1123. These cases announce rules of law governing mandamus generally, with which we are in accord, but they conclude by holding that unsuccessful bidders for a public contract, may maintain mandamus to compel the awarding of the contract to them, upon a showing that the award of the contract to a higher bidder was the result of fraud, favoritism or an abuse of discretion vested in the awarding officers. To that extent, these cases should be and are overruled.

If the contract with the General Electric X-Ray Corporation was not entered into in good faith, the law affords taxpayers a complete remedy for its cancellation, but private individuals, as unsuccessful bidders, cannot maintain a suit in their own behalf to cancel the award as made and compel the awarding of the contract to them. [State ex rel. Doniphan State Bank v. Harris et al., supra.]

The provisional rule in prohibition should be made absolute. It is so ordered. All concur, except *Hays, J.*, who also concurs except as to the ruling concerning the cases of State ex rel. National Bank v. Bourne and State ex rel. Journal Printing Company v. Dreyer et al.