STATE ex rel. MID–MISSOURI LIME-STONE, INC. and Mertens Construction Co., Inc., Appellants/Plaintiffs

v.

COUNTY OF CALLAWAY, Callaway County Commission, Rodney Garnett, Paul Renoe Maurice Russell, Lee Fritz, Robert Ranken, and Eva Fine, Respondents/Defendants.

No. WD 54154.

Missouri Court of Appeals, Western District.

Feb. 24, 1998.

---

Paul W. Johnson, Edwardsville, for appellants.

Robert R. Sterner, Pros. Atty., Fulton, for respondents.

Before ELLIS, P.J., and ULRICH, C.J., and RIEDERER, J.

RIEDERER, Judge.

Mid-Missouri Limestone, Inc., and Mertens Construction Co., Inc., appeal the dismissal of their petition for a preliminary writ of mandamus.

On April 2, 1996, Appellants filed a two-count petition. In Count I, Appellants sought a preliminary writ of mandamus, alleging that the Respondents had failed to

follow the provisions of § 50.760 [1] in the procurement of rock and gravel. Specifically, Appellants allege Respondents had failed to solicit or receive sealed bids for rock and gravel products, or to contract with the lowest and best bidder. Under Count II, Appellants sought damages, alleging Respondents breached a statutory duty created by § 50.760. Appellants contend that § 50.760 established a duty on the part of Respondents to undertake sealed competitive bidding for the purpose of obtaining the lowest and best bid for the procurement of necessary supplies and goods for the County's uses. Appellants maintain that they have suffered economic damage due to Respondents' failure to abide by § 50.760.

On May 9, 1996, Respondents filed a motion to dismiss Appellants' petition for failure to state a claim for which relief can be granted, along with suggestions in opposition to the writ of mandamus. On February 14, 1997, Appellants filed a response to Respondents' motion to dismiss and suggestions in opposition to writ of mandamus. On February 24, 1997, the trial court sustained Respondents' motion to dismiss, stating without explanation: "Motion to Dismiss is sustained." This appeal ensued.

### Point I—Writ of Mandamus

When an appellate court reviews a trial court's dismissal of a writ of mandamus, the concern is whether the trial court reached the correct result. *Wheat v. Bd. of Probation & Parole*, 932 S.W.2d 835, 838 (Mo.App.1996). "Therefore, we sustain the judgment of the trial court in a mandamus action unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Wheat*, 932 S.W.2d 835 at 838 (*citing State ex rel. Lupo v. City of Wentzville*, 886 S.W.2d 727, 730 (Mo.App.1994)).

"Where a preliminary writ is denied, the petitioner may not appeal but must file for the writ anew in the next highest court." *Id.* In this case, Mid–Missouri Limestone, Inc., and Mertens Construction Co., Inc.'s remedy is a direct application for writ of mandamus to a higher court. *Harkins v. Mitchell*, 911 S.W.2d 689, 690 (Mo.App.1995). Appeal dismissed as to Point I.

### Point II—Legal Standing

In Point II, Appellants assert that the trial court erred in sustaining Respondents' motion to dismiss for failure to state a claim upon which relief can be granted. Appellants contend that § 50.760 established a duty on the part of Respondents to undertake sealed competitive bidding for the purpose of obtaining the lowest and best bid for the procurement of necessary supplies and goods for the County's uses. Specifically, Appellants claim they have been damaged in the approximate amount of $50,000 due to Respondents' breach of a statutory duty allegedly created by § 50.760.

### A. Standard of Review

In reviewing a trial court's dismissal of a petition for failure to state a claim upon which relief can be granted, all averments are liberally construed and facts pleaded are accepted as true. *Gipson v. Slagle*, 820 S.W.2d 595, 596 (Mo.App.1991) (*citing Asaro v. Cardinal Glennon Memorial Hosp.*, 799 S.W.2d 595, 597 (Mo. banc 1990)). These facts and their reasonable inferences are viewed in the light most favorable to plaintiffs. *Id.* If these facts and inferences invoke any principles of substantive law upon which relief can be granted, the decision of the trial court must be reversed. *Id.*

Appellants contest the trial court's dismissal for failure to state a claim by asserting that they have standing, which is a prerequisite to stating a claim. *Metcalf & Eddy Services, Inc. v. City of St. Charles*, 701 S.W.2d 497, 499 (Mo.App.1985) (*citing State v. Sevier*, 339 Mo. 483, 98 S.W.2d 677, 679 (Mo. banc 1936)). Appellants maintain that they have standing as taxpayers and as unsuccessful bidders. We review each of these claims.

### B. Taxpayer Standing

First, Appellants assert they have standing as taxpayers. "Absent fraud or other com-

1. All statutory references are from **RSMo 1994,** unless otherwise indicated.

pelling circumstances, in order to have standing as a taxpayer, the taxpayer must be able to demonstrate that the transaction in issue effects a direct expenditure of funds generated through taxation ... or a pecuniary loss attributable to the challenged transaction." *Mid–America Georgian Gardens, Inc. v. Missouri Health Facilities Review Committee,* 908 S.W.2d 715, 717–718 (Mo.App.1995) (*citing Eastern Missouri Laborers Dist. Council v. St. Louis County,* 781 S.W.2d 43, 47 (Mo. banc 1989)). The rule allowing taxpayers standing to sue does not have as its purpose a private redress but rather a public benefit. *Id.* "The private injury that invests standing to a taxpayer is not a purely personal grievance in which other taxpayers have no interests, but an injury shared by the public at large." *Id.* at 718.

▮▮▮▮ Appellants maintain that they have taxpayer standing because the Respondents have allegedly "ripped off" the taxpayers of Callaway County by initially not taking statutorily-mandated competitive bids. Appellants failed to cite authority in their brief on appeal to support this assertion. "Under Rule 84.04(d), an appellant's obligation includes citing appropriate and available precedent to support its contention." *Carlund Corp. v. Crown Center Redevelopment Corp.,* 910 S.W.2d 273, 278 (Mo.App.1995) (*citing Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978)); *Shiyr v. Pinckney,* 896 S.W.2d 69 (Mo.App.1995). An explanation is required for the absence of citations and if no authority exists. *Id.* Thus, a reviewing court is justified in considering a point abandoned if there is no authority or no explanation as to why authority is not available. *Carlund,* 910 S.W.2d 273 at 278 (*citing Ray v. Upjohn Co.,* 851 S.W.2d 646, 656 (Mo.App.1993)).

Appellant's argument concerning taxpayer standing is deemed abandoned.

### C.   Unsuccessful Bidder Standing

▮▮▮▮ Appellants also contend that they have standing to bring their claim as unsuccessful bidders pursuant to §§ 50.760–.790, under which goods and supplies are purchased by Respondents. In order for the relators to have standing to maintain their cause of action, they must allege a special pecuniary interest in the matter. *Metcalf & Eddy Services, Inc.,* 701 S.W.2d 497 at 499. Whether plaintiff has standing as an unsuccessful bidder to maintain its cause of action is a prerequisite to affording plaintiff a review on the merits of its petition. *Id.* Plaintiff must allege a special pecuniary interest in the matter showing a clear legal right to the relief asked. *Id.* The rejection of Appellants' bid does not give them an enforceable private right. *Id.* Appellants'status as unsuccessful bidders does not give them private, pecuniary interests which the law will recognize and enforce. *La Mar Const. Co. v. Holt County, R–II School Dist.,* 542 S.W.2d 568, 570 (Mo.App.1976) (*citing State v. Sevier,* 339 Mo. 483, 98 S.W.2d 677, 679 (Mo. banc 1936)). Appellants were not deprived of anything to which they were legally entitled and therefore cannot state a cause of action. *Id.* at 570–571. The court in *Sevier* advanced two reasons why an unsuccessful bidder lacks a legal right to the relief requested: "(1) Because the 'advertisement was not an offer of a contract, but an offer to receive proposals for a contract,' and (2) because the statute requiring that contracts be let to the lowest and best bidder was designed for the benefit and protection of public and not the bidders." *Sevier,* 98 S.W.2d 677 at 679. Appellants base their claim for relief on § 50.760,[2] which

---

**2.** It shall be the duty of the commissioners of the county commission in all counties ... to determine the kind and quantity of supplies, including any advertising or printing which the county may be required to do, required by law to be paid for out of county funds, which will be necessary for the use of several officers of such county during the current year, **and to advertise for sealed bids and contract with the lowest and best bidder for such supplies.** Before letting any such contract or contracts the commission shall cause notice that it will receive sealed bids for such supplies to be given by advertisement ..., **except that if**

**by nature or quantity of any article or thing needed for any county officer in any county of this state** to which sections 50.760 to 50.790 apply, **the same may not be included in such contract at a saving to such county, then such article or thing may be purchased for such officer upon an order of the county commission** first being made and entered as provided in section 50.760 to 50.790; **and except further, that if any supplies not included in such contract are required by any such officer or if the supplies included in such contract are exhausted then such article or thing may be purchased for such**

is entitled: "Advertisement for bids, procedures for." This statute requires the county "to advertise for sealed bids." This advertisement is not an offer of contract, but an offer to receive proposals. *Sevier*, 98 S.W.2d 677 at 680. The statute also requires the county to "contract with the lowest and best bidder." This provision vests the county with broad discretion. *Id.* at 678. Appellants do not deny the county had broad discretion in determining who is the "lowest and best bidder." This is the same type of statute analyzed in both *Sevier* and *La Mar* cited *supra.* As such, Appellants do not have legal standing to assert their claim for damages or otherwise.

Appellants cite *Metropolitan Exp. Services, Inc. v. City of Kansas City, MO,* as support for the proposition that unsuccessful bidders have standing to challenge a contract if it is not fairly bid. 23 F.3d 1367, 1371 (8th Cir.1994). *Metropolitan* is distinguishable from the present case for two reasons. First, the Plaintiffs in *Metropolitan* did not even submit a bid. *Id.* Second, the court in *Metropolitan* noted that the bids were not solicited on an equal basis for all bidders and concluded that "an unsuccessful bidder has standing to challenge a contract that was not *fairly* bid. *Id.* (emphasis added). In this case, Appellants had an opportunity to bid. Appellants do not contend that these Callaway County bids were not fairly made, and they do not contend that other bids were chosen over theirs for other than valid reasons. The outcome would be different if the rejection of Appellants' bid were made "fraudulently, corruptly, capriciously, or without reason." *La Mar*, 542 S.W.2d 568 at 571.

■ Appellants in their brief on appeal claim they alleged below that "they were the only quarry owners to submit sealed competitive bids in compliance with § 50.760." They repeat this statement later in their brief. We have searched in vain for this allegation. The record on appeal reveals no such allegation. Further, the Appellants argue in their brief on appeal that "they. were in fact awarded purchase order contracts with the

county subsequent to January 1, 1993, which purchase order contracts were violated and ignored by Respondents." Similarly, the record on appeal does not reveal any such allegation. The record, however, does reveal statements in the Petition that allude to written contracts and agreements. For example, Appellants alleged below that, "Respondents nevertheless failed to abide by and did in fact breach written contracts and agreements reached by the County Commission with various quarries including Relators herein...." At oral argument, the Court asked Appellants whether they ever had a written contract or agreement with the county commission and Appellants told this Court that they never had a contract with Callaway County. Moreover, it is not clear from the pleadings below that the Appellants ever actually made a bid under the competitive bidding process set up by Callaway County. Although the Appellants' petition below contains a number of conclusory statements, it does not comply with Missouri's long standing rules requiring "fact pleading." *See ITT Commercial Finance Corp. v. Mid–Am. Marine & Supply Corp.,* 854 S.W.2d 371 at 379–80 (Mo. banc 1993). "To state a cause of action, a pleading must contain a short and plain statement of the facts showing entitlement to relief." *Mackey v. Mackey,* 914 S.W.2d 48, 50 (Mo. App.1996) (*citing Lick Creek Sewer Sys. v. Bank of Bourbon,* 747 S.W.2d 317, 322 (Mo. App.1988)). Conclusions not supported by facts are disregarded. *Id.*

Appellants lack legal standing to bring the case at bar. For the foregoing reasons, judgment of the trial court is affirmed.

All concur.

---

officer upon order of the county commission first being made and entered of record as provided in sections 50.760 to 50.790. (emphasis added).